## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTINA SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | )    CIVIL ACTION |
| v. | ) |
| | )    No. 11-1097-JWL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for SSI on July 17, 2008, alleging disability beginning February 15, 2006.  (R. 9, 109, 117-19).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

(ALJ).  (R. 11, 55-56, 75-76).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Linda L. Sybrant on June 16, 2010.  (R. 9, 24).  At the hearing, Plaintiff amended her alleged onset date to July 17, 2008, and testimony was taken from Plaintiff and from a vocational expert.  (R. 9, 25-27).

On August 20, 2010, ALJ Sybrant issued her decision, finding that although Plaintiff has a severe combination of impairments, she does not have an impairment or combination of impairments that meets or medically equals the criteria of the listed impairments, and that there are a significant number of jobs in the national economy that Plaintiff can perform.  (R. 9-17).  Therefore, the ALJ found Plaintiff not disabled within the meaning of the Act, and denied her application for SSI benefits.  (R. 18).  Plaintiff argued that the ALJ's decision is not supported by substantial record evidence, and sought review by the Appeals Council.  (R. 107-08).  The Appeals Council considered Plaintiff's arguments, found that they do not provide a basis to change the ALJ's decision, found no reason under the Social Security Administration's rules to review the decision, and denied review.  (R. 1-2).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

3

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2010);[1] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe

---

[1]The opinion at issue in this case was issued on August 20, 2010.  (R. 9-18). Therefore all citations to the Code of Federal Regulations in this opinion are to the 2010 regulations, except as otherwise specifically cited.

impairment(s), and whether the severity of her impairment(s) meets or equals the severity

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment

is used at both step four and step five of the sequential evaluation process.  Id.

     The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform her past relevant work; and whether, when

considering vocational factors of age, education, and work experience, claimant is able to

perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

1084).  In steps one through four the burden is on claimant to prove a disability that

prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v.

Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step

five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's

capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

     Plaintiff makes two claims of error in the ALJ's decision.  She claims the ALJ

erred in finding that Plaintiff's impairments do not meet or equal the criteria of Listing

12.05C for mild mental retardation, and that the ALJ erred in her evaluation of the

credibility of Plaintiff's allegations of symptoms resulting from her impairments.  The

Commissioner argues that substantial evidence supports the ALJ's finding with regard to

Listing 12.05C, and the ALJ properly considered the credibility of Plaintiff's subjective

complaints and found them inconsistent with the evidence, and that substantial record

evidence supports the ALJ's credibility finding.  The court agrees with the

Commissioner's argument that substantial evidence supports the ALJ's decision, and

finds no error as alleged by Plaintiff in the decision.

**III.    Listing 12.05C - Mild Mental Retardation**

Plaintiff asserts that she meets the criteria of Listing 12.05C because (1) "[t]here is

ample evidence that Ms. Smith had intellectual deficits before the age of twenty-two" (Pl.

Br. 17), (2) she has valid I.Q. scores in the sixties, id. at 16-17, and (3) the ALJ found that

Plaintiff has other severe physical and mental impairments including morbid obesity,

anxiety, and depressive disorder.[2]  Id. at 17-18.  Plaintiff then cites record evidence,

certain of the ALJ's reasons for finding Plaintiff does not meet or equal the Listing

12.05C criteria, and case law and the regulations, and argues that the factors relied upon

by the ALJ are improper and that "[t]he evidence would clearly show [that Plaintiff] has

the [(2)] I.Q. scores, [(3)] additional impairment and [(1)]deficits before age twenty-two

to qualify for listing 12.05C." [2] Id. 18-20 (numbering added).  Plaintiff argues that "the

ALJ's reliance on Ms. Smith's work history, daily activities and education to invalidate

the latest I.Q. scores is misguided."  Id. at 20 (relying upon Muntzert v. Astrue, 502 F.

Supp. 2d 1148 (D. Kan. 2007)).  In her final argument, Plaintiff asserts that "the ALJ did

---

[2]Numbering has been assigned to Plaintiff's arguments to show the alleged
correspondence with the criteria of Listing 12.05C.  See, infra at 11.

not even consider whether [Plaintiff's impairments] equaled the listing," and that the ALJ's bare statement that Plaintiff does not equal a Listing is "beyond meaningful judicial review." Id. at 20-21 (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The Commissioner argues substantial evidence supports the ALJ's determination that Plaintiff's condition does not meet or equal the criteria of Listing 12.05C. (Comm'r Br. 5). Specifically, he argues that the ALJ found Listing 12.05C is not met because the evidence does "not show significant subaverage general intellectual functioning with deficits in adaptive functioning manifested before age 22," (criteria number (1) of Listing 12.05C). Id. at 6. The Commissioner then cites record evidence, certain of the ALJ's reasons for finding Plaintiff does not meet or equal the Listing criteria, and case law and the regulations, distinguishes the cases relied upon in Plaintiff's brief (Comm'r Br. 6-12), and argues that substantial evidence supports the ALJ's finding that Plaintiff's condition does not meet Listing 12.05C.

With regard to consideration whether Plaintiff's condition equals a Listing, the Commissioner notes that the ALJ stated she had considered whether Plaintiff's impairments equaled a Listing, and he cites to legal authority for the proposition that absent specific evidence to the contrary, the court should assume the ALJ did what she said. Id. at 12 (citing Hackett, 395 F.3d at 1172-73). He argues that because "the ALJ discussed multiple relevant listings and linked her evaluation with evidence in the record,

. . . [she] properly considered whether Plaintiff's impairments equaled the severity of a listing." Id. at 12-13 (citation to the record omitted). The Commissioner argues that medical equivalence must be based on medical evidence, but that Plaintiff presented no medical evidence suggesting that her condition equals Listing 12.05C, whereas the record contains medical opinions from two psychologists who reviewed the evidence and opined that Plaintiff's condition does not equal the severity of a Listed impairment. Id. at 13 (citing (R. 13, 343-51, 516)).

In her reply, Plaintiff reiterates the need for substantial evidence supporting the Commissioner's decisions. (Reply 3) (citing Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996)). She points out that a reviewing court must rely on the rationale contained in the decision, and may not create or rely upon post hoc rationale. (Reply 3) (citing NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. __, slip op. 99-1815, p.8,n.1 (2001)).[3] Plaintiff then distinguishes the authority cited in the Commissioner's brief, asserts again that the ALJ's reliance on Plaintiff's work history, daily activities, and education to find no "deficits in adaptive functioning before age twenty-two is misguided," and argues again that "[t]he evidence would clearly show [Plaintiff] has the [(2)] I.Q. scores,

---

[3]Plaintiff did not provide a copy of the slip opinion with her brief. However, the court recognized that the decision cited by Plaintiff was decided in 2001, and after some time searching, the court found that it is a published opinion and its citation is NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 714 n.1 (2001).

[(3)] additional impairment and [(1)] deficits before age twenty-two to qualify for listing 12.05C." (Reply 5).

### A.      Standard for Evaluating Listing 12.05C at Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling.  20 C.F.R. § 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see also Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson, 987 F.2d at 1487 (burden shifts to Commissioner only at step five).

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).

The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

   Listing 12.05 provides, in relevant part:

    12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period:  i.e., the evidence demonstrates or supports onset of the impairment before age 22.
    The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

    C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05 differs from the other listings for mental disorders.  Id., § 12.00A.  It contains a diagnostic description of mental retardation (introductory paragraph) and four sets of criteria describing listing-level severity (Paragraphs A through D).  20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00A, 12.05A-D.  There are four distinct ways in which a claimant may establish disability pursuant to listing 12.05.  Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1 (10th Cir. Aug. 26, 1993).  To meet the listing, plaintiff

must show that her condition satisfies <u>both</u> the diagnostic description of mental retardation <u>and</u> any one of the four severity criteria.  <u>Id.</u>, § 12.00A.

The regulations provide that where I.Q. scores are derived from a test, the lowest individual score of the three will be used when considering Listing 12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D(6)(c).  If the claimant has an additional physical or mental impairment(s) which is "severe" within the meaning of 20 C.F.R. § 416.920(c), it will be considered to impose an additional and significant work-related limitation of function in accordance with Listing 12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A; <u>see also</u>, <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (reaching the same conclusion before the regulations were changed in 2000 to specify the equivalence between "severe" impairments and "additional and significant work-related limitation of function.").  Therefore, to meet Listing 12.05C, a claimant must show: (1) evidence of deficits in adaptive functioning initially manifested during the developmental period, (2) a valid I.Q. score of 60 through 70, and (3) another severe impairment.

## B.       The ALJ's Findings

In her step three discussion, the ALJ recognized Plaintiff's assertion that her condition meets the criteria of Listing 12.05C, but the ALJ found that Plaintiff's condition does not meet those criteria.  (R. 11-13).  The ALJ quoted Listing 12.05C, and summarized the record evidence regarding Plaintiff's mental impairments.  <u>Id.</u>  She noted

Plaintiff's school records which contain I.Q. scores of 72 through 83 achieved at age 12 in testing using the Wechsler Intelligence Scale for Children III.  (R. 12) (citing Ex. 1F (R. 248-69)).  She noted the results of a Woodcock-Johnson achievement test administered at age 15 which revealed scores in the "low range" in the "broad reading" and "broad knowledge" tests, and in the "low average" range in "broad math" and "broad written" tests.  Id.

The ALJ noted that in October 2008 (Plaintiff aged 22), Dr. Barnett, Ph.D., did a psychological examination and testing of Plaintiff using the Wechsler Adult Intelligence Scale III, which resulted in I.Q. scores from 63 to 66.  (R. 12).  She noted Dr. Barnett's diagnosis of mild mental retardation.  Id.  She noted that in concurrent testing by Dr. Barnett, Plaintiff achieved scores on the Memory Scale from 75 to 85 and performed both Memory Trails without error.  Id. at 13.  Finally, she noted Dr. Barnett's opinion that Plaintiff would be capable of simple repetitive work tasks, with some complex tasks.  Id.

The ALJ stated that she had also reviewed the medical evidence relating to Plaintiff's other mental impairments--depression, anxiety disorder, and history of substance abuse.  Id.  She summarized that evidence, and summarized the medical source statements of Plaintiff's treating social worker, Ms. Robin Jackson, who assessed Plaintiff with moderate to marked limitations in many areas of mental functioning in August, 2009, but with moderate to extreme limitations in May 2010.  (R. 13).  The ALJ explained her reasons for rejecting Ms. Jackson's opinions, stated her findings regarding Plaintiff's

limitations in the four broad mental functional areas considered in the Commissioner's psychiatric review technique, and explained the reasons for her findings.  Id.

The court discerns at least eight reasons expressed by the ALJ to find that Plaintiff's condition does not meet the criteria of Listing 12.05.  (1) Plaintiff achieved higher I.Q. scores in school (the developmental period).  (2) Achievement scores in the developmental period were more consistent with borderline functioning.  (3) Current memory testing, (4) Plaintiff's significant activity level, and (5) Plaintiff's vocational history are not consistent with mental retardation.  (6) Dr. Barnett's opinion that Plaintiff is capable of simple repetitive work with some complex tasks, is more consistent with a better level of functioning than mental retardation. (7) School records reflect a learning disability rather than mental retardation.  And, (8) Plaintiff has had a drivers' license since the age of 16.  (R. 13).

### C.    Analysis

The ALJ did not find the I.Q. scores reported by Dr. Barnett were invalid.  To the contrary, she accepted them, and reported them at face value.  (R. 12-13).  Moreover, she also found that Plaintiff has additional severe physical impairments and severe mental impairments.  (R. 11) (finding severe impairments including morbid obesity, anxiety disorder, and depressive disorder).  Therefore, as Plaintiff suggests, the ALJ found that Plaintiff's condition meets the second and the third criteria of Listing 12.05--(2) a valid I.Q. score of 60 through 70, and (3) another severe impairment.

13

However, as the court's recitation of the ALJ's rationale reveals, the ALJ found that the evidence demonstrates Plaintiff's condition does not meet the first criterion of Listing 12.05--(1) evidence of deficits in adaptive functioning initially manifested during the developmental period.  In fact, reasons 1, 2, 4, 5, 7, and 8 all relate specifically to Plaintiff's achievement and adaptation during her developmental period (before age 22).  Although reason number 3 relates to <u>current</u> memory testing, the ALJ included that reason in a sentence in which she stated reasons 3, 4, and 5 are "not consistent with mental retardation with adaptive functioning manifested before age 22."  (R. 13).  Thus, it is clear the ALJ was focusing on deficits in adaptive functioning initially manifested during the developmental period, when she found that Plaintiff's condition does not meet the severity of Listing 12.05C.  Moreover, her recitation of reason number 6 focuses on "level of functioning," and suggests that although Dr. Barnett diagnosed mild mental retardation, in finding that Plaintiff could perform simple work with some complex tasks he also recognized that Plaintiff might function at a higher level than mild mental retardation.

Plaintiff's reliance upon <u>Muntzert</u> is misplaced.  As in this case, the Plaintiff in <u>Muntzert</u> claimed his condition met Listing 12.05C, and he had also been tested by Dr. Barnett.  502 F. Supp. 2d at 1150.  Dr. Barnett reported I.Q. scores of 62 through 66 for Mr. Muntzert, but the ALJ found those I.Q. scores were not valid.  <u>Id.</u> at 1150, 1157.  The ALJ based his finding of invalid I.Q. scores on Dr. Barnett's report, Plaintiff's high

14

school record, and Plaintiff's work history.  <u>Muntzert</u>, 502 F. Supp. 2d at 1157.  However, the district court found that the ALJ did not properly consider the evidence regarding those three areas, "and did not consider other relevant and probative evidence bearing on the validity of the IQ scores."  <u>Id.</u>  The court noted that Mr. Muntzert's school records revealed an I.Q. score of 67 assigned when he was thirteen, and that the records were not provided to the agency until after all of the medical opinions in the record were completed.  <u>Id.</u> at 1159.  The court expressed its "overarching concern . . . that no medical professional was aware of the IQ scores obtained when plaintiff was thirteen."  <u>Id.</u>  Moreover, the court expressed concern over the fact that the Plaintiff had spent two years undergoing treatment in a mental hospital but the Commissioner did not seek records of that treatment.  <u>Id.</u>  Therefore, the court decided that remand was necessary for the Commissioner to provide copies of these records to Dr. Barnett, seek clarification regarding the doctor's opinion of the validity of the recent I.Q. test scores, and to resolve ambiguities in the record and make a proper evaluation regarding the validity of the scores and whether Plaintiff met the Listing.  <u>Id.</u> at 1157-59.  Here, the ALJ did not find the scores assessed by Dr. Barnett invalid, Plaintiff does not point to evidence which was overlooked or ignored by the ALJ, and the court finds no error in the ALJ's evaluation.

Plaintiff points to the "Medical criteria for the evaluation of impairments of children under age 18," 20 C.F.R., Pt. 404, Subpt. P, App. A, Part B and § 112.00, and argues that I.Q. scores achieved before age 16 should be considered valid for no longer

than two years, but that I.Q. scores tend to stabilize after age 16, and that the scores assessed by Dr. Barnett "should be considered more valid" than the I.Q. scores assessed in school when Plaintiff was 12 years old.  (Pl. Br. 18-19).  Again, Plaintiff misses the point of the decision at issue.  The ALJ did not find the more recent scores invalid.  Nor did she find the earlier scores valid.  Rather, she relied upon the fact that the scores achieved during the developmental period were higher than scores achieved after that period as one factor among eight factors to decide that Plaintiff has not shown that she had deficits in adaptive functioning initially manifested during the developmental period.

To be sure, the record evidence is equivocal, and Plaintiff points to evidence from which it might have been determined that Plaintiff had deficits in adaptive functioning initially manifested during the developmental period.  (Pl. Br. 17-20).  While the reasons Plaintiff advances for finding that the criteria of Listing 12.05C are met "might be persuasive on de novo review, they ultimately amount to invitations to re-weigh the evidence, which this court may not do."  Bridger Coal Co. v. Dir., Office of Workers' Comp. Programs, __ F.3d __, __, slip op., No. 11-9531 at 22, 2012 WL 627986 at *8 (10th Cir. 2012).  As the Tenth Circuit has said in the context of judicial review of a decision of the Social Security Commissioner, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have

made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  Therefore, it is insufficient for Plaintiff merely to show that the evidence might support a different finding, she must show that the ALJ's finding is erroneous, or is contrary to the record evidence.  She has not done so here.

Plaintiff's argument that the ALJ did not even consider whether Plaintiff's condition equaled Listing 12.05C is without merit.  As the Commissioner points out, the ALJ specifically found that Plaintiff has <u>no impairment</u> <u>or combination thereof</u> that medically equals a listed impairment.  (R. 11) (finding no. 3).  Further, Plaintiff does not attempt to suggest how medical equivalence is shown in this case.  Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience.  <u>Id.</u> § 416.926(c).  In her argument regarding medical equivalence, plaintiff does not cite to medical evidence that her impairments in combination produce limitations which equal the severity of Listing 12.05C.  Moreover, she points to no medical evidence which demonstrates that her impairments in combination produce limitations equivalent to "deficits in adaptive functioning initially manifested during the developmental period," that Listing 12.05C criterion which the ALJ found is not met here.  As the Commissioner points out, the fact that Dr. Schulman

17

noted that Plaintiff had severe mental impairments, and noted that a mental RFC assessment was necessary, but did not find medical equivalence, is medical evidence suggesting that Plaintiff's impairments are not medically equal to Listing 12.05C. Plaintiff has not met her step three burden to show medical equivalence.

To the extent Plaintiff asserts error in the ALJ's failure to state that Listing 12.05C is not medically equaled, the court finds no error. Plaintiff points to no authority for the proposition that an ALJ must make a statement regarding medical equivalency for each Listing specifically considered, and the court is aware of none. To require such a statement in this case would be to elevate form over substance because the ALJ specifically considered Listing 12.05C and stated her finding that Plaintiff's condition does not medically equal any listed impairment. Here, there was no need for the ALJ to distinguish record evidence suggesting medical equivalence beyond that evidence specifically considered in evaluating whether Listing 12.05C was met. The court finds no error in the ALJ's step three finding.

**IV.    Credibility**

Plaintiff claims the ALJ's "credibility analysis was short and vague," and stated only that Plaintiff's allegations were inconsistent with her significant activity level, and her eight-month record of work at Wal-Mart. (Pl. Br. 22). She claims that the ALJ "did not even mention the third party function reports in the decision and state what weight she gave them." Id. at 23. She concludes her argument by asserting that "the ALJ's analysis

18

was short on concrete reasons Ms. Smith's testimony should be disregarded," and that the

ALJ failed to provide a proper <u>Luna</u> analysis.  (Pl. Br. 25).  The Commissioner argues

that the ALJ properly considered the credibility of Plaintiff's allegation of disabling

symptoms.  Specifically, he argues that the ALJ considered a number of factors relevant

to the credibility determination, including:  consistency with objective medical evidence;

use and effectiveness of medication; extensiveness of treatment for symptoms; the

opinion of Plaintiff's treating nurse-practitioner, Karen Edelman, regarding plaintiff's

limitations; Dr. Barnett's opinion that Plaintiff could perform simple, repetitive work

tasks, and some complex tasks; Plaintiff's activity level; and Plaintiff's work history.

Finally, the Commissioner argues that the third-party function reports were largely

cumulative of Plaintiff's testimony and other evidence, and failure to specifically discuss

them is not grounds for remand.  (Comm'r Br. 20) (citing <u>Brescia v. Astrue</u>, No. 07-4234,

2008 WL 2662593 (10th Cir. July 8, 2008)).

## A.      Standard for Evaluating Credibility

The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms.  <u>Thompson</u>, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing

> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Id., 987 F.2d at 1488(citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R.

§ 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489.  The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors stated by

the courts:  Daily activities; location, duration, frequency, and intensity of symptoms;

factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side

effects of medications taken to relieve symptoms; treatment for symptoms; measures

plaintiff has taken to relieve symptoms; and other factors concerning limitations or

restrictions resulting from symptoms.  20 C.F.R. § 416.929(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review.

Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d

407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); Hackett, 395 F.3d at 1173 (same).

### B.     Analysis

The ALJ stated that she had considered Plaintiff's allegation of symptoms in accordance with the applicable regulations and rulings.  (R. 14) (citing 20 C.F.R. § 416.929; and Soc. Sec. Rulings (SSR) 96-4p, 96-7p).  She stated that she must consider whether there is an impairment(s) which could reasonably be expected to produce the symptoms alleged, and if so, she must consider the entire case record and determine whether Plaintiff's allegations of symptoms are credible.  (R. 14-15).  This procedure meets the framework of Luna, and Plaintiff does not argue otherwise.  The ALJ next summarized Plaintiff's allegations of symptoms.  (R. 15).  She then stated why she found Plaintiff's allegations not credible:

21

> The undersigned does [(1)] not find the claimant's allegations of total disability to be supported by the evidence in this case. The [(2)] claimant has a significant activity level performing chores, cooking, cleaning, and shopping for the household. The [(3)] claimant, while having difficulty with reading and writing, still maintains the capacity to perform simple routine tasks. Her [(4)] history of working as a cashier for Wal-mart for an 8-month period supports the conclusion that she would be able to perform simpler tasks at a lower exertional level, which accommodated her mental and physical limitations. The claimant complains of pain and difficulties with standing and walking but [(5)] only takes medications for her asthma and [(6)] has not been documented as having an arthritic condition.

(R. 16).

Contrary to Plaintiff's argument, the ALJ's credibility analysis was neither short nor vague. The analysis was a full paragraph long and provided six specific reasons for finding Plaintiff's allegations not credible. The Commissioner provided four reasons in addition to the two reasons recognized by Plaintiff. Moreover, the ALJ's reasons relate back to her specific summaries and analysis of the record evidence pursuant to findings number three and number four. (R. 11-16). This is not short on concrete reasons.

Plaintiff is correct that the Tenth Circuit has found error in credibility findings resting on the mere sporadic performance of household tasks or work. (Pl. Br.23) (citing Hamlin v. Barnhart, 365 F.3d 1208 (10th Cir. 2004); and Thompson, 987 F.2d at 1489). However, the credibility determination at issue here rests on far more than daily activities or the sporadic performance of household tasks or work. It rests on four other reasons in addition to "a significant activity level" and a "history of working as a cashier for Wal-Mart for an 8-month period."

Plaintiff misunderstands the decision at issue when he argues that the ALJ contradicted herself by stating that the Wal-Mart job accommodated Plaintiff's mental and physical limitations, and asserts that if Plaintiff requires accommodation she is not capable of competitive employment.  In the ALJ's statement as quoted above, she did not suggest either that the Wal-Mart job accommodated Plaintiff's limitations or that Plaintiff needs accommodation.  The sense of the ALJ's statement regarding the Wal-Mart job is that the Wal-Mart job is more complex and requires more exertion than the RFC assessed by the ALJ, and that working as much as eight months at that job supports the ALJ's finding that Plaintiff would be able to work on jobs at a lower exertional level and which require only simple tasks.  Moreover, it suggests that work within the RFC assessed by the ALJ would accommodate Plaintiff's mental and physical limitations, and there would be no need for an employer to provide further accommodation by reducing the demands on Plaintiff below the demands normally required of such work.

Plaintiff's sole argument with regard to the third party function reports of her mother-in-law was that they confirmed Plaintiff's allegations that her husband did a lot of the chores, and that Plaintiff did not like going shopping alone.  (Pl. Br. 22-23).  She then complains that the ALJ did not even mention this lay witness testimony.  Id. at 23.  As the Commissioner suggests, the case of Brescia v. Astrue, 287 Fed. Appx. 626, 630-31 (10th Cir. 2008) provides the answer for this alleged error.  In Brescia, the plaintiff argued that the ALJ ignored lay witness testimony from her sister and a friend.  Id. at 630.  Noting

that an ALJ is not required to discuss every piece of evidence, and that the Tenth Circuit has rejected a rule requiring specific findings regarding the credibility of every witness, the Brescia court found no grounds for remand because the ALJ stated that he had considered all of the evidence, and because the evidence at issue was largely cumulative of the plaintiff's testimony.  Brescia, 287 Fed. Appx. at 630-31 (citing Hackett, 395 F.3d at 1173; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996); and Clifton, 79 F.3d at 1009-10).  As Plaintiff admits, her mother-in-law's reports were largely cumulative of Plaintiff's own allegations.  Moreover, as in Brescia, the ALJ here stated that she had considered "the entire record."  (R. 11).  The court finds no error in the ALJ's failure to specifically discuss the function reports provided by Plaintiff's mother-in-law.

Again, the evidence regarding the credibility of Plaintiff's allegations of symptoms is equivocal, and the ALJ might have credited those allegations.  As with Listing 12.05C, Plaintiff's arguments that her allegations should have been credited and her citation to evidence tending to support that assertion "might be persuasive on de novo review, [but] they ultimately amount to invitations to re-weigh the evidence, which this court may not do."  Bridger Coal Co., 2012 WL 627986 at *8.  As discussed above, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de

novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>,

<u>Consolo</u>, 383 U.S. at 620.  Plaintiff has not shown error in the ALJ's credibility analysis.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 7th day of March 2012, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum            </u>
**John W. Lungstrum**
**United States District Judge**